**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **BARRY BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:14-CV-156 (MTT)** |
| | ) | |
| **COLLECTION SERVICES OF ATHENS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

Before the Court is the Defendant's motion for judgment on the pleadings.  (Doc. 11).  For the following reasons, the Defendant's motion is **GRANTED in part and DENIED in part**.

### I.    BACKGROUND

The Plaintiff Barry Brown alleges the following facts, which the Court must accept as true.  On November 19, 2013, the Defendant Collection Services of Athens, Inc. ("Collection Services") sent a debt collection letter ("Letter") to Brown's residence to recover a debt.  (Docs. 1 at ¶ 9; 1-1).  Brown had allegedly defaulted on one or more debts related to medical services for the alleged amount of $2,864.00.  (Doc. 1 at ¶ 10).  Collection Services titled the Letter "PAYROLL DEDUCTION REQUEST" and requested Brown arrange a payroll deduction through Brown's employer.  (Doc. 1 at ¶¶ 12-14).  It went on to say: "If you do not want to involve your employer, you may discuss other alternatives."  (Doc. 1-1).  The Letter then "demanded" Brown call Collection Services

"within [ten] days to set up the amount [Brown] would like to be deducted from [his] paycheck to pay this account."  (Doc. 1 at ¶ 15).

Collection Services listed in the Letter's heading "Responsible Party #2173522." (Doc. 1-1).  Brown alleges the Letter's "demand" for him to set up a paycheck deduction was to pay off "this account."  (Doc. 1 at ¶¶ 19, 26).  Brown emphasized "this account" is singular and presumably references the debt for "Responsible Party #2173522."  (Doc. 1 at ¶¶ 19-20).  Then, Collection Services listed a series of nine debts in a chart in the body of the Letter—a debt for Responsible Party #2173522 in the amount of $871.00 plus eight other debts with different responsible party numbers all of which total $2,864.00.  (Doc. 1-1).  This chart cataloged the name of the creditor, account number, the responsible party number, the date of service, and the current balance for each debt.  (Doc. 1-1).  The Letter also included a tear-away attachment that could be mailed to pay the "balance."  (Doc. 1-1).  The only responsible party listed in this attachment was Responsible Party #2173522, and the balance of $2,864.00 was listed underneath it.  (Docs. 1 at ¶¶ 19-20; 1-1).

Brown filed a claim asserting the Letter violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA").  (Doc. 1).  Collection Services then moved for judgment on the pleadings.  (Doc. 11).

## II.   DISCUSSION

### A.  Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "Judgment on the pleadings is appropriate when there are no material facts in dispute and the

moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach,* 250 F.3d 1299, 1301 (11th Cir. 2001)). "A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss." *Provident Mut. Life Ins. Co. of Phila. v. City of Atlanta,* 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

**B. Fair Debt Collection Practices Act**[1]

To state a claim pursuant to the FDCPA, a plaintiff must show that a debt collector attempted to collect a consumer debt through an act or omission prohibited by the FDCPA. *See Pescatrice v. Orovitz*, 539 F. Supp. 2d 1375, 1378 (S.D. Fla. 2008). "The [FDCPA] provides a civil cause of action against any debt collector who fails to comply with the requirements of the Act." *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009) (citation omitted). Prohibited acts include, *inter alia*: (1) falsely representing "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); (2) representing or implying "nonpayment of any debt will result in the … seizure, garnishment, attachment, or sale of any … wages of any person unless such action is lawful and the debt collector … intends to take such action," 15 U.S.C. § 1692e(4); (3) threatening "to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5); (4) using "any false representation or deceptive means to collect or attempt to collect any debt," 15 U.S.C. § 1692e(10); and (5) using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. *See also Hepsen v. Resurgent Capital Servs., LP*, 383 F. App'x 877, 881 (11th Cir. 2010) ("The FDCPA generally prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt,' and the use of 'unfair or unconscionable means to collect or attempt to collect any debt.'" (quoting 15 U.S.C. §§ 1692e, 1692f)).

---

[1] In his complaint, Brown asserts Collection Services violated § 1692d, but in his response to Collection Services's motion, he "withdraws that reference and stipulates that any reference to 15 U.S.C. § 1692d be stricken from the [c]omplaint." (Doc. 12 at 3). Accordingly, the Court will not address this section of the statute.

The "least sophisticated consumer" standard is used "to evaluate whether a debt collector's conduct is deceptive, misleading, unconscionable, or unfair."[2] *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 (11th Cir. 2014) (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193-94, 1200-01) (11th Cir. 2010)) (internal quotation marks omitted). "The inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is whether the 'least sophisticated consumer' would have been deceived by the debt collector's conduct." *Id.* (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177 n.11 (11th Cir. 1985)) (internal quotation marks omitted). "'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194 (citation omitted). "[T]he test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *Id.* (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)) (internal quotation marks omitted).[3]

---

[2] Regarding the statutory provisions at issue in this case, the "least sophisticated consumer" standard is used to evaluate whether a debt collector violated §§ 1692e(4) and (10) and § 1692f. *See LeBlanc*, 601 F.3d at 1193, 1200; *Jeter*, 760 F.2d at 1177. It is also used to evaluate whether a debt collector threatened to take an action that cannot legally be taken in violation of the first part of § 1692e(5). *See LeBlanc*, 601 F.3d at 1195. However, when determining whether a debt collector threatened to take an action it did not intend to take in violation of the second part of subsection (5), it is of no consequence how the least sophisticated consumer perceived the debt collector's actions. *See Jeter*, 760 F.2d at 1175. "[T]he relevant intent—whether the debt collector truly intends to take the threatened action—is evaluated from the perspective of the debt collector as opposed to the debtor." *LeBlanc*, 601 F.3d at 1193 n.16. Nonetheless, this distinction will not affect the Court's analysis because, as explained below, Brown did not allege in his complaint that Collection Services threatened to take an action it did not intend to take. *See infra* n.4.

[3] The Eleventh Circuit in *LeBlanc* emphasized the rationale behind adopting the objective "least sophisticated consumer" standard:

> In adopting the "least-sophisticated consumer" standard, we took into account the purposes of the FDCPA, the general jurisprudence concerning § 5 of The Federal Trade Commission Act ("FTC" Act), and the prior FTC enforcement in the debt collection area. Because we thought the FDCPA sought to grant consumers *more* protection, we viewed

In its motion, Collection Services argues the Letter did not imply or threaten a garnishment action, did not misrepresent the character or amount of the debt owed, and was not otherwise false, misleading, or unfair. (Doc. 11 at 4, 10, 18). Further, Brown's reading of the Letter is "bizarre and idiosyncratic" and ignores the fact the Letter was clearly a request for a voluntary payroll deduction. (Doc. 11 at 7-8). Brown alleges the Letter was written in such a way as to pressure him into thinking that his failure to respond would result in contact with his employer and a garnishment action, and moreover, the Letter misrepresented the amount of the debt owed. (Doc. 1 at ¶¶ 27-28). Brown contends he sufficiently alleged facts to demonstrate Collection Services violated multiple provisions: 15 U.S.C. §§ 1692e(2)(A), (4), (5), and (10) and § 1692f. (Doc. 12 at 1-13). These alleged violations can be factually arranged into two categories: (1) the implied garnishment threat and (2) the representation of the debt amount.

### 1. The implied garnishment threat

Brown alleges Collection Services constructed the Letter to imply a threat that Brown's nonpayment would result in contact with his employer and a garnishment action and thus violated 15 U.S.C. §§ 1692e(4), (5), and (10) and § 1692f. (Docs. 1 at ¶ 16; 12 at 6-7). As stated above, a debt collector may violate these provisions when the least sophisticated consumer can perceive with a quotient of reasonableness that the debt collection attempt (1) implies a garnishment will occur without a legal right or intent

---

the FDCPA as an expansion of the protections provided by previously existing federal legislation and regulation. … As we discussed the FTC Act and its jurisprudence in *Jeter,* we noted: "That law was not 'made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous ...' and [t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."
601 F.3d at 1194 (quoting *Jeter,* 760 F.2d at 1172-73) (internal citation omitted).

to garnish in violation of § 1692e(4); (2) threatens to take an action the debt collector cannot legally take, such as garnishment without a legal right to do so in violation of § 1692e(5); (3) uses a false representation or deceptive means to collect the debt in violation of § 1692e(10); and (4) uses unfair or unconscionable means to collect a debt in violation of § 1692f.

Brown's complaint centers around the allegation Collection Services both implied and threatened Brown's employer would be contacted and his wages garnished should he not reply within the ten-day window provided, and this threat also constituted a deceptive and unfair attempt to collect the debt in violation of §§ 1692e(10) and 1692f.[4] Specifically, Brown alleges the least sophisticated consumer would have perceived the Letter implied that nonpayment would result in garnishment because of the title "PAYROLL DEDUCTION REQUEST," the request to involve Brown's employer, and the "command" to reply within ten days to set up a paycheck deduction.  (Doc. 1 at ¶¶ 12-17).  Such an implication is unlawful under the statute without a legal right authorizing a garnishment.[5]  Moreover, Brown alleges Collection Services framed this implication as a threat: "If you do not want to involve your employer, you may discuss other alternatives." (Docs. 1 at ¶¶ 13-18; 12 at 5-6).  "[T]hreatening communications include … threats to

---

[4] Brown also argues that Collection Services violated the second part of § 1692e(5) which prohibits threatening to take an action the debt collector did not intend to take.  Brown contends Collection Services threatened to garnish his wages and involve his employer when it presumably did not intend to take either action, and that discovery is necessary to explore this intent.  (Doc. 12 at 8).  Collection Services did not move to dismiss on the second part of subsection (5) and replies that nowhere in the complaint did Brown assert a violation of an unintended action or include any facts to make an implicit allegation.  (Doc. 14 at 5).  The Court agrees Brown did not allege Collection Services threatened an unintended action.  Accordingly, the second part of subsection (5) is not at issue in this case.

[5] Garnishing a debtor's wages is not lawful without a judgment against a debtor or without another legal right to do so.  *See* 15 U.S.C. § 1672(c) ("The term 'garnishment' means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."); *see also Atwater v. Roudebush*, 452 F. Supp. 622, 631 (N.D. Ill. 1976) ("[T]he term 'garnishment' contemplates a judicial transaction." (citing *Western v. Hodgson*, 494 F.2d 379 (4th Cir. 1974))).

garnish wages." *Ferguson v. Credit Mgmt. Control, Inc.*, 140 F. Supp. 2d 1293, 1299-1300 (M.D. Fla. 2001) (citation omitted).   However, where the debt collector explains that garnishment is one potential legal consequence among others that it may lawfully take should the debtor fail to pay, it is not a threat which violates subsection (5).   *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718 (11th Cir. 2011) ("The transcripts of these calls show that Ingram's employees merely explained … the potential consequences that he faced if he failed to pay his debt and Ingram filed suit against him and obtained a favorable judgment. …"); *see also Sparks v. Phillips & Cohen Assocs.*, *Ltd.*, 641 F. Supp. 2d 1234, 1249 (S.D. Ala. 2008) (holding innocuous statements about potential options the debt collector could legally pursue should the debtor fail to pay are legally insufficient to violate § 1692e).

Here, the Court agrees from the perspective of the least sophisticated consumer, that Collection Services, without an apparent legal right to do so, both implied and threatened a garnishment action.  Considering together the title of the Letter, the "request" to involve Brown's employer, the ten-day window to set up a "paycheck deduction," and the sentence "If you do not want to involve your employer, you may discuss other alternatives," the Court concludes that to the least sophisticated consumer, the Letter could be read as a threat Collection Services would involve Brown's employer and engage in a garnishment action should he not reply within ten days.  The Court is persuaded that the language and construction of the sentence "If you do not want to involve your employer, you may discuss other alternatives" is sufficiently similar to examples of implied threats Brown provided:  "If you do not want to involve the police, you may discuss compensation" and "If you do not want to involve

the media, you may discuss other alternatives." (Doc. 12 at 6 n.2). With these similarities in mind, a debtor with a quotient of reasonableness could read the sentence in the Letter as such an implied threat. Moreover, because this language constitutes an implied threat to garnish Brown's wages, it necessarily implies a garnishment will occur and thus violates § 1692e(4) as well.

Further, the collection attempt in this case is distinguishable from the lawful attempt in *Shuler*. There, the debt collector informed the debtor of possible options it, as a debt collection law firm, was legally entitled to take, including a possible garnishment action, should the debtor fail to pay. *Shuler v. Ingram & Assocs.*, 710 F. Supp. 2d 1213, 1224-25 (N.D. Ala. 2010), *aff'd*, 441 F. App'x 712 (11th Cir. 2011). The court held that this list of options did not improperly threaten the debtor, but simply put the debtor on notice of possible consequences of nonpayment. *Id.* ("The statements that Ingram may place a lien on plaintiffs' property, garnish Shuler's wages, that Ingram prosecutes debts like his, and always wins since the debt is owed, do not constitute threats or actions that Ingram could not or did not intend to take. Rather, the statements placed plaintiffs on notice of options legally available to Ingram. As such, they are not prohibited by §§ 1692e(4) and (5).") (footnote omitted). Here, on the other hand, Collection Services did not shield itself from a plausible FDCPA violation because it did not include such an explanation or list potential consequences that were in fact legally available to it as a debt collection agency. Instead, from the perspective of the least sophisticated consumer, the Letter impliedly threatened that Brown's employer would become involved and a garnishment would occur if he failed to reply within ten days. Thus, taking the allegations as true and drawing all reasonable inferences in

favor of Brown, the Court concludes Brown stated a plausible claim that Collection Services violated §§ 1692e(4) and (5).

Brown further alleges this threat violated §§ 1692e(10) and 1692f because it would deceptively lead the least sophisticated consumer to believe his only choices to be either discuss payment alternatives or involve his employer.  (Docs. 1 at ¶¶ 26-28; 12 at 8, 9, 13).  As to § 1692e(10), "one need not threaten anything to constitute an e(10) violation; mere deception, intentional or unintentional, to collect or attempt to collect any debt … is sufficient to constitute a violation."  *In re Cambron*, 379 B.R. 371, 379 (Bankr. M.D. Ala. 2007) (internal quotation marks omitted).  Moreover, "[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate."  *Melillo v. Shendell & Assocs., P.A.*, 2012 WL 253205, at *6 (S.D. Fla.) (quoting *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011)) (internal quotation marks omitted).  For § 1692f, a debt collection attempt is "unfair" when it has the "tendency to deceive" the least sophisticated consumer.  *LeBlanc*, 601 F.3d at 1200.

Here, from the perspective of the least sophisticated consumer, impliedly threatening to contact an employer through a garnishment action is a deceptive means in a collection attempt when the debt collector has no apparent legal right to either contact the employer or deduct from the debtor's wages.  The Parties ultimately dispute whether the Letter is an implied threat of garnishment or simply a voluntary payroll deduction.  However, a least sophisticated consumer, reading a Letter from a debt collection agency which includes a ten-day window to set up a paycheck deduction and implies his employer will be contacted if he fails to reply, would likely interpret the Letter

to mean his wages will be deducted, or garnished, should he fail to arrange a payment alternative.  *See Schimmel v. Slaughter*, 975 F. Supp. 1357, 1363 (M.D. Ga. 1997) (holding the sentence "After judgment is obtained, garnishment can be brought to satisfy judgment" was susceptible to two meanings, and the least sophisticated consumer could perceive it to mean a judgment authorizing a garnishment is a certainty once a lawsuit is filed; thus the debt collector violated subsection (10)); *see also Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1369 (M.D. Fla. 2002).  Further, even if this threat could be read as a simple request for "voluntary payroll deduction," where the Letter is susceptible to two meanings—one of which is inaccurate—it is nevertheless deceptive.  *See Melillo*, 2012 WL 253205, at *6.

Moreover, reading the complaint in the light most favorable to Brown, the Court concludes Brown stated a plausible claim the collection attempt was also "unfair" and thus violated § 1692f because this veiled threat has the "tendency to deceive" the least sophisticated consumer to believe that Collection Services will contact his employer and deduct from his wages should he not reply within the ten-day window.  *See Knighten v. Palisades Collections, LLC*, 721 F. Supp. 2d 1261, 1271 (S.D. Fla. 2010) (holding a single action prohibited by the FDCPA violated multiple provisions including both § 1692e(10) and § 1692f).

In sum, at this stage in litigation, the Court disagrees Brown's reading of the Letter as an implied threat of garnishment constitutes a "bizarre or idiosyncratic interpretation."  *See Leblanc*, 601 F.3d at 1194 (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136) (internal quotation marks omitted).  Rather, Brown's allegations preserve, at the very least, a "quotient of reasonableness" required to satisfy the "least sophisticated

consumer" standard.  *See id.* (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136) (internal

quotation marks omitted).  The Parties ultimately disagree on the inferences to be

drawn from the Letter.  But this disagreement, where reasonable, is not for the Court to

resolve in a motion for judgment on the pleadings.  *See Thomas v. LDG Fin. Servs.,*

*LLC*, 463 F. Supp. 2d 1370, 1374 (N.D. Ga. 2006) ("Such a disagreement, if

reasonable, is for the jury to determine, not for the court to determine in a motion to

dismiss context.").  Accordingly, the Court cannot say at this stage in litigation Brown

has failed to state a plausible FDCPA claim.

### 2. *The representation of the debt amount*

Brown argues Collection Services violated § 1692e(2)(A), as well as subsection

(10) and § 1692f, by falsely representing the character and amount of the debt.[6]  (Docs.

12 at 10-11; 1 at ¶ 26).  The only responsible party listed in the tear-away attachment

was Responsible Party #2173522, but the balance of $2,864.00—the total of the nine

debts collectively—was listed underneath it.  (Docs. 12 at 10-11; 1 at ¶ 27).  Because

the chart indicates the balance of the debt for Responsible Party #2173522 totals

$871.00, Brown argues the least sophisticated consumer could read the chart together

with the attachment to state two different balances for the same debt.  (Doc. 12 at 12).

Collection Services argues that the Letter, read with care, plainly shows the debt

associated with Responsible Party #2173522 has a different balance than the total of

the debts listed in the chart.  (Doc. 11 at 13).

---

[6] In his complaint, Brown does not specifically reference § 1692e(2)(A) but rather § 1692e as a whole, as well as other specific subsections.  However, the alleged violation of § 1692e(2)(A) is implicit in the complaint: "It … misrepresents the character of the debt for Defendant to purposefully seek payment of $2,864.00 in connection with debt for Responsible Party #2173522, when that debt only totals $871.00 … ."  (Doc. 1 at ¶ 26).  Although Collection Services does not specifically reference this subsection in its motion, it challenges paragraph 26 which, again, implicitly asserts Collection Services violated § 1692e(2)(A).  Accordingly, the Court will address this provision.

As stated above, the Court must presume that the least sophisticated consumer "possesses a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194.  In the present case, to a least sophisticated consumer reading with some care, the chart, listing the debt number, creditor, and balance of each individual debt, makes it clear that Brown owes $871.00 for the single debt associated with Responsible Party #2173522 and that the nine debts in the chart added together equal a separate total of $2,864.00.  Given this chart, the mere proximity of Responsible Party #2173522 to the total debt balance in the tear-away attachment does not create a false representation of the debt amount. In other words, the Court disagrees the Letter falsely states two different balances for the debt associated with Responsible Party #2173522.  *Cf. Hepsen*, 383 F. App'x at 881 (holding the district court appropriately denied summary judgment for the debt collector where there was evidence the debt collector demanded an initial amount, which the debtor disputed, and then stated a different amount for the same debt).  Further, because Collection Services did not falsely represent the debt amount in violation of § 1692e(2)(A), it did not deceptively or unfairly represent the debt amount in violation of subsection (10) or § 1692f.

In sum, considering the heading, the chart, and tear-away attachment together, the Court concludes Brown's reading of the Letter is "bizarre and idiosyncratic" and does not possess the "quotient of reasonableness" required to satisfy the "least sophisticated consumer" standard.  Moreover, the Letter's characterization of the debt amount does not constitute an abusive practice the FDCPA was designed to prevent, and to the extent there is confusion about the debt amount owed, the Court does not

find Brown was harmed or prejudiced by Collection Services's representation of the debt amount. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 401 (6th Cir. 1998) (holding the defendant did not violate § 1692e(10) where the plaintiff could not demonstrate any "prejudice or harm suffered as a result of the use of the alias"). Accordingly, taking the allegations as true and drawing all reasonable inferences in favor of Brown, the Court concludes Brown has failed to state a plausible claim Collection Services violated §§ 1692e(2)(A) or (10) or § 1692f by its representation of the debt amount.

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion as to the alleged violations of §§ 1692e(4), (5), and (10) and § 1692f for the implied garnishment threat is **DENIED**. The Defendant's motion as to the alleged violations of subsections §§ 1692e(2)(A) and (10) and § 1692f for the false representation of the debt amount is **GRANTED**.

**SO ORDERED**, this 23rd day of December, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT